FILED
January 13, 2016
TN COURT OF
WORKERS' COMPENSATION
CLAIMS
TIME 9:02 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Julian Phillips<br>　　　　　Employee, | )<br>) | Docket No.: 2015-01-0208 |
| v. | ) | State File Number: 58335-2015 |
| Carolina Construction Solutions<br>　　　　　Employer, | )<br>)<br>) | Judge Audrey A. Headrick |
| And | ) | |
| Guarantee Insurance<br>　　　　　Insurance Carrier. | )<br>)<br>) | |

---

## EXPEDITED HEARING ORDER DENYING
## REQUESTED MEDICAL AND TEMPORARY DISABILITY BENEFITS
## (REVIEW OF THE FILE)

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Julian Phillips, on November 2, 2015. On November 25, 2015, Mr. Phillips filed Employee's Motion to Amend his Request for Expedited Hearing. On December 3, 2015, the Court entered an Agreed Order amending Mr. Phillips' request for an in-person evidentiary hearing to a review of the file. The central legal issue is whether Mr. Phillips is likely to prevail at a hearing on the merits. CCS disputes that Mr. Phillips is entitled to the requested cervical surgery or to any additional temporary disability benefits. For the reasons set forth below, the Court finds Mr. Phillips is not entitled to the requested medical and temporary disability benefits.[1]

### History of Claim

Mr. Phillips is a sixty-year-old resident of Hamilton County, Tennessee. (T.R. 1.) He worked for CCS as a construction engineer.[2] *Id.* Mr. Phillips seeks medical benefits

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] The Court notes that pleadings filed on behalf of the employer identify it as "Century Employer Organization, LLC," a temporary staffing agency. However, all other filings identify the employer as "Carolina Construction Solutions." Patriot Risk Services is the third-party administrator identified for both entities. Additionally, the payroll voucher filed on behalf of the employer identifies it as "CCS Construction Staffing, Inc." (Ex. 2 at Ex. 1.)

and past and ongoing temporary disability benefits for an alleged cervical injury that occurred on November 21, 2014, while operating vibrating machinery.[3] *Id.*

Based upon the briefs submitted by the parties, Mr. Phillips initially sustained a work-related low-back injury on October 15, 2014, while working for CCS. (T.R. 4 and T.R. 6.) On October 23, 2014, Mr. Phillips provided a handwritten note to "Jason" at CCS documenting his verbal notice of reporting his low-back injury to Sam Harvey, his supervisor. (Ex. 2 at 7.) CCS accepted Mr. Phillips' low-back injury as compensable and authorized treatment. (T.R. 4.) On November 5, 2014, the treating physician for Mr. Phillips' back injury released him to full duty. *Id.*

In Mr. Phillips' affidavit, he stated that on November 21, 2014, he "was repeatedly operating a vibrating drill (similar to a jack hammer) to place rods ten (10) feet into the ground." (T.R. 6, Ex. 1.) Mr. Phillips stated he, "immediately began to experience upper back pain with left arm numbness and tingling into [his] left hand." He stated he, "did not know that the cause of [his] upper back pain with left arm numbness and tingling into [his] left hand was the result of a neck injury." Mr. Phillips stated he had not experienced upper back or left arm numbness and tingling in his left hand until November 21, 2014, which was the last day that he worked.

On December 1, 2014, Mr. Phillips sought treatment on his own with Dr. Brian Smith complaining of left elbow pain that radiated "up into his shoulder and numbness in his middle and index finger for about two weeks and pain in his 'funny bone.'" (Ex. 1 at 5.) Dr. Smith noted that Mr. Phillips did "not recall an injury" and denied having neck pain. Mr. Phillips told Dr. Smith he went to the emergency room twice and received steroid injections. Dr. Smith stated he needed to "rule out possible carpal tunnel syndrome, ulnar neuropathy and/or cervical radiculopathy." He recommended a nerve conduction study and a cervical MRI "to rule out radicular pain." Mr. Phillips postponed the tests, since he did not have medical insurance at that time.

On December 24, 2014, Mr. Phillips submitted a handwritten letter to Jason at CCS. (Ex. 2 at 7.) He enclosed two pages of discharge instructions from Erlanger hospital regarding back pain and degenerative joint disease. Mr. Phillips stated the report "contains the diagnosis of degenerative back disease." In his letter, Mr. Phillips stated Erlanger performed a CT scan of his back. There is no mention in his letter of an incident occurring on November 21, 2014. Mr. Phillips also did not express any complaints in the letter regarding left arm pain or numbness.

---

Additionally, the Agreed Order entered by the Court lists "Carolina Construction Solutions" in the caption. (T.R. 8.) Therefore, the Court finds that Carolina Construction Solutions and Century Employer Organization, LLC are the same company, and the Court will refer to the employer as CCS throughout the Order.

[3] On the PBD, Mr. Phillips, who was initially a self-represented litigant, checked all of the boxes for every type of benefit listed with the exception of death benefits.

On January 2, 2015, Mr. Phillips went to Doctors Express, which listed the visit as "Work. Comp. F/U."[4] (Ex. 2 at Ex. 3.) Mr. Phillips complained of having left arm pain for two months with numbness and tingling in his left hand. He also told the medical provider he "started having pain while carrying heavy conduit pipes at work on [his] shoulder." The medical provider diagnosed Mr. Phillips with cervical radiculitis and recommended that he "follow up with orthopedic surgeon for MRI to rule out nerve impingement." It is undisputed by the parties that CCS provided Mr. Phillips with a panel pursuant to the referral, from which he selected Dr. Jason Eck. (T.R. 4.)

On January 21, 2015, Mr. Phillips saw Dr. Eck complaining "of numbness/tingling in his left upper extremity and somewhat in the right extremity, weakness in the left upper extremity and pain in the neck and low back with coughing/sneezing." (Ex. 1 at 11.) Mr. Phillips told Dr. Eck "his pain started by using a jack hammer at work." He also told Dr. Eck his low-back pain began in October 2014 and his upper back and left arm pain began on November 21, 2014. Mr. Phillips indicated his upper back, neck, and left arm symptoms were new.

At the January 21, 2015 visit, Dr. Eck reviewed Mr. Phillips' cervical CT scan and thoracic CT scans previously performed at Erlanger hospital on December 18, 2014. *Id.* at 12-13. He diagnosed Mr. Phillips with left upper extremity weakness, C5-C7 degenerative disc disease and stenosis, and radiculopathy. *Id.* at 13. Dr. Eck opined Mr. Phillips' "[c]urrent symptoms are likely related to his work injury aggravating pre-existing asymptomatic degenerative changes." *Id.* He took Mr. Phillips off work and recommended that he have an anterior cervical discectomy anterior interbody fusion performed at C5-C7. *Id.* On January 23, 2015, Dr. Eck prepared an order for Mr. Phillips' recommended surgery. *Id.* at 26. On January 27, 2015, CCS denied the surgical request. (T.R. 4.)

On February 16, 2015, Mr. Phillips saw Dr. Eck and complained his symptoms had "progressively worsened since November." (Ex. 1 at 14.) Dr. Eck noted that Mr. Phillips' "surgery was denied by worker's compensation." *Id.* He ordered physical therapy, kept Mr. Phillips off work, and continued to recommend the ACDF. *Id.* at 15.

On March 9, 2015, Mr. Phillips returned to see Dr. Eck. *Id.* at 16. Dr. Eck kept Mr. Phillips off work. He noted that Mr. Phillips had "failed all non-operative treatments." *Id.* at 17. Dr. Eck kept Mr. Phillips off work. *Id.*

On March 20, 2015, Terry Flowers, the adjuster for CCS' insurance company, sent e-mail correspondence to Dr. Eck's office. (T.R. 6 at Ex. 3.) In Ms. Flowers' e-mail to Dr. Eck's office, she requested that Dr. Eck "provide his professional medical opinion as to whether the need for the cervical C5-7 ACDF is the result of the reported low back and

---

[4] It appears that CCS authorized Mr. Phillips' treatment at Doctors Express.

hip injury from 10-15-14 or is this something that is not related to the 10-15-14 accident." In her e-mail, Ms. Flowers asserted, "on 1-12-15 the nurse case manager, Sharon Best, faxed [Mr. Phillips'] medical records with an authorization letter to Dr. Eck advising the eval/treat was for low back only." Ms. Flowers also asserted, "Mr. Phillips did not report cervical pain as his injured body part and we never provided treatment to the cervical area."

On March 20, 2015, Dr. Eck responded to Ms. Flowers' correspondence. (Ex. 2 at Ex. 4.) Dr. Eck stated as follows:

> I have been treating this patient since 1/21/15. His complaints have always been consistent with pain to the upper back and lower back and left arm pain to the fingers. I do believe the injury is directly related to the workers' compensation injury, which occurred in October 2014. I have recommended a cervical fusion. The result of this patient not having surgery could be permanent damage.

On April 29, 2015, Dr. Kimberly D. Terry, a Board Certified-neurosurgeon licensed in Tennessee, performed a utilization review and denied Dr. Eck's recommended ACDF. (Ex. 2 at Ex. 5.) She specifically referenced October 15, 2014, as Mr. Phillips' date of injury. Dr. Terry provided two bases for denying the ACDF. First, she stated that Mr. Phillips, "is a current every day smoker, and there is no indication in the documents submitted that the patient is on a tobacco cessation program." Dr. Terry also stated, "[t]here is no current imaging submitted for review indicating that the patient has degenerative changes at the C5 through C7 level with spinal stenosis." Her denial indicates she was in receipt of the cervical CT report from December 18, 2014. It is undisputed that neither Mr. Phillips nor Dr. Eck appealed the UR denial. (T.R. 6.)

On June 10, 2015, Mr. Phillips returned to see Dr. Eck. (Ex. 1 at 18.) Dr. Eck noted that, "[s]urgery has been denied by worker's comp despite his progressive weakness." *Id.* at 19. He kept Mr. Phillips off work. *Id.*

On July 17, 2015, Mr. Phillips saw Dr. Eck. *Id.* at 20. He stated to Dr. Eck, "I am getting worse." *Id.* Dr. Eck reiterated that the denial of Mr. Phillips' surgery and noted his progressive weakness. *Id.* at 21. He opined that Mr. Phillips was unable to work, was permanently disabled, and was at maximum medical improvement. *Id.* Dr. Eck stated Mr. Phillips "needs surgery due to progressive deficit." *Id.* at 23.

On July 27, 2015, Mr. Phillips prepared a handwritten statement documenting his November 21, 2014 injury. (Ex. 2 at 7.) He stated he last worked on November 21, 2014, when he was injured. Mr. Phillips stated:

> The workman's comp. insurance co. has been paying me since January

4

2015, and sending me to the doctor I chose from their panel. The delay came because I didn't know what was wrong with me, but after seeking medical help on my own, it was finally discovered that I had indeed been injured at work, and the workman's comp. insurance co. agreed, and started paying me.

On August 13, 2015, Dr. Shay Richardson, a physician in Dr. Eck's practice, completed a Final Medical Report regarding Mr. Phillips. (Ex. 1 at 24.) He assigned Mr. Phillips with a medical impairment rating of 25% to the body as a whole. He left the "date of injury" section of the form blank.

In Dr. Eck's affidavit, he stated Mr. Phillips provided him with a history of using a vibrating drill on November 21, 2014, to place rods ten feet into the ground. (T.R. 6 at Ex. 2.) He opined, "within a reasonable degree of medical certainty, that Mr. Phillips' cervical and thoracic injuries are primarily a result of his employment on November 21, 2014" with CCS. Dr. Eck opined "within a reasonable degree of medical certainty, that Mr. Phillips' employment with [CCS] on November 21, 2014 primarily resulted in an aggravation and progression of his pre-existing degenerative cervical condition." He stated he recommended the ACDF "as a result of [Mr. Phillips'] neck injury sustained on November 21, 2014." Dr. Eck opined the surgery "is medically necessary to care and treat Mr. Phillips' neck injury and prevent worsening of permanent neurologic injury."

Regarding Dr. Eck placing Mr. Phillips at MMI, he stated in his affidavit he only did so "due to workers' compensation denying his cervical surgery." Dr. Eck opined that "if the cervical surgery is approved by the Employer's insurer or the Court of Workers' Compensation, it is my opinion that Mr. Phillips was not at [MMI] on July 17, 2015." Additionally, Dr. Eck stated that, "Mr. Phillips has been out of work since November 21, 2014, and will be indefinitely due to his neck injury sustained on November 21, 2014, while employed with [CCS]."

Mr. Phillips filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on August 18, 2015. (T.R. 2.) Mr. Phillips filed a Request for Expedited Hearing on November 2, 2015. (T.R. 3.) Upon Mr. Phillips' motion to amend his Request for Expedited Hearing from an in-person evidentiary hearing to a review of the file, the Court entered an Agreed Order on December 3, 2015.

Mr. Phillips asks the Court to order the cervical surgery recommended by Dr. Eck as well as past and ongoing temporary total disability benefits from November 21, 2014, forward. CCS asks the Court to deny Mr. Phillips' claim because it contends he cannot prove his pre-existing cervical condition arose primarily in the course and scope of his employment on November 21, 2014, while using a vibrating drill. Regarding the

5

requested cervical surgery, CCS argues both that Mr. Phillips cannot prove the need for his surgery is primarily related to his alleged injury and that he cannot circumvent the UR process, which resulted in a denial of the recommended surgery.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[5] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

The Court finds that Mr. Phillips failed to demonstrate a likelihood of success on the merits at trial. In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14)(B) (2015). Further, "[a]n injury causes . . . the need for medical treatment only if it has been shown to a

---

[5] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

6

reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14)(C) (2014).

CCS argued in its pre-hearing brief that Mr. Phillips cannot meet his burden of succeeding on the merits of his claim that he sustained an injury to his cervical spine on November 21, 2014, while using a vibrating drill. (T.R. 4.) In support of its contention, CCS filed, among other exhibits, an Affidavit of Jason Perillo, a manager for CCS. (T.R. 4 at 8; Ex. 2 at 8.) In its pre-hearing brief, CCS specifically cited Mr. Perillo's affidavit to show "there is simply no reasonable explanation as to why [Mr. Phillips] never reported his claimed 'jackhammer' neck injury of November 21, 2014." (T.R. 4.) Mr. Perillo states in his affidavit that "[a]t no time during Mr. Phillips' employment did he ever report to have sustained an injury to his neck from the use of power tools, or otherwise."[6] (T.R. 4 at 8; Ex. 2 at 8.) Essentially, CCS argued that statements made by Mr. Phillips to his medical providers as well as his own handwritten statements are "too inconsistent and unreliable to support an award for the relief requested." (T.R. 4.) It contends that the records reflect inconsistencies by Mr. Phillips regarding the date and mechanism of his injury.

In Mr. Phillips' affidavit, he stated he initially did not realize he had injured his neck until after he sought medical treatment on his own. (T.R. 6 at Ex. 1.) Mr. Phillips stated, "I underwent a cervical CT scan and I was advised that I had sustained a neck injury as a result of my work for [CCS]." *Id.* However, on December 1, 2014, when Mr. Phillips treated with Dr. Smith on his own, he gave a history of his symptoms beginning two weeks prior. (Ex. 1 at 5.) He told Dr. Smith that he did "not recall an injury" and denied having any neck pain.

On December 24, 2014, Mr. Phillips made no mention of an incident occurring on November 21, 2014, in his handwritten letter to Jason at CCS. (Ex. 2 at 7.) He also did not state that he was having any left arm pain or numbness. Instead, Mr. Phillips stated that the emergency room performed a CT scan of his back and diagnosed him with "degenerative back disease." On January 2, 2015, Mr. Phillips saw a medical provider at Doctors Express, and gave a two-month history of having left arm pain with numbness and tingling in his left hand. (Ex. 2 at Ex. 3.) Mr. Phillips specifically told the medical provider that he "started having pain while carrying heavy conduit pipes at work on [his] shoulder." The various histories given by Mr. Phillips directly conflict with one another as well as with the history he gave to Dr. Eck, his panel physician, on January 21, 2015.

---

6 In the DCN filed on August 16, 2015, CCS did not raise the defense of whether Mr. Phillips provided adequate notice. Pursuant to Rule 0800-02-21-.01(10), "no issue that is not contained within the dispute certification notice may be submitted to the judge for adjudication" unless permission is granted by the Court. Tenn. Comp. R. & Regs. 0800-02-21-.01(10) (2015). To the extent that CCS' arguments constitute a notice defense, the Court will not address the arguments. (T.R. 2.)

7

At Mr. Phillips' January 21, 2015 visit with Dr. Eck, he gave a history that "his pain started by using a jack hammer at work" on November 21, 2014. (Ex. 1 at 11.) Dr. Eck opined Mr. Phillips' "[c]urrent symptoms are likely related to his work injury aggravating pre-existing asymptomatic degenerative changes." (Ex. 1 at 13.) Two months later, Dr. Eck responded on March 20, 2015, to correspondence from the adjuster for CCS' insurance company and opined, "I do believe the injury is directly related to the workers' compensation injury, which occurred in October 2014." (Ex. 2 at Ex. 4.) In Dr. Eck's subsequent affidavit, he provided new details not reflected in his January 21, 2015 office note. He stated that Mr. Phillips gave a history of using a vibrating drill on November 21, 2014, to place rods ten feet into the ground. (T.R. 6 at Ex. 2.) Dr. Eck also opined that, "Mr. Phillips' cervical and thoracic injuries are primarily a result of his employment on November 21, 2014." (T.R. 6 at Ex. 2.) In addition to the contradictory and/or inconsistent statements previously discussed, the Court also notes that Mr. Phillips vacillated between referencing an injury sustained while using a "jack hammer" versus a "vibrating drill."

The Court finds Mr. Phillips is unlikely to prove the occurrence of an accident by a preponderance of the evidence at a hearing on the merits consistent with Tennessee Code section 50-6-239(d)(1). In order to meet his burden of proof, Mr. Phillips is required to offer evidence of a "specific incident, or set of incidents . . . identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). However, in the present case, Mr. Phillips contradictory statements regarding the alleged occurrence on November 21, 2014, is insufficient to establish that he is entitled to workers' compensation benefits. Therefore, the Court finds that Mr. Phillips failed to meet his burden of proof.

**IT IS, THEREFORE ORDERED:**

1. Mr. Phillips' requested relief is denied.

2. This matter is set for an Initial (Scheduling) Hearing on March 7, 2016, at 10:00 a.m., ET.

**ENTERED this the 13th day of January, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement.  All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Employee's Filing of Medical Records and Table of Contents, November 25, 2015
2. Employer's Submission of Evidence and Table of Contents, November 25, 2015

Technical Record:[7]
1. Petition for Benefit Determination, July 29, 2015
2. Dispute Certification Notice, August 18, 2015
3. Request for Expedited Hearing, November 3, 2015
4. Employer's Response Brief to Employee's Expedited Request for Benefits, November 9, 2015
5. Notice of Scheduled Hearing, November 12, 2015
6. Employee's Brief Supporting his Request for Expedited Hearing, November 25, 2015
7. Employee's Motion to Amend his Request for Expedited Hearing, November 25, 2015
8. Agreed Order, December 3, 2015

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Medical Benefits and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 13th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Julie A. Reasonover, Employee's Counsel | | | X | julie@jstillman.com |
| Stephen B. Morton, Employer's Counsel | | | X | Stephen.morton@mgclaw.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

12